UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| CHRISTOPHER OWENS, # 279084, | ) | Civil Action No.: 4:06-3355-TLW-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| | ) | |
| SOUTH CAROLINA DEPARTMENT | ) | |
| OF CORRECTIONS, LT. BIRD, SGT. | ) | |
| WILLIAMS, CAPTAIN PRICE, OFFICER | ) | |
| OUTLAW, SGT. OF TRANSPORTATION,) | | |
| OFFICER GREY HOUSE, OFFICER | ) | |
| PHILLIPS, FNU LT. W/M, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

I.     **INTRODUCTION**

Plaintiff, proceeding pro se, is an inmate in the custody of the South Carolina Department of Corrections (SCDC), and is housed at Perry Correctional Institution (PCI). Plaintiff, along with four other inmates at PCI, originally filed suit in the Richland County Court of Common Pleas. Defendants removed the action to this Court and filed a Motion to Sever, which was granted on November 29, 2006. Plaintiff asserts claims for cruel and unusual punishment and deliberate indifference pursuant to 42 U.S.C. § 1983 as well as state law claims for gross negligence, gross negligence in supervision and retention, due process, conspiracy, retaliation and assault and battery.

Presently pending before the Court are Plaintiff's Motion for Protection, Injunction and/or Counsel (Document # 12), Plaintiff's Request for Entry of Default (Document # 18), and Defendants' Motion for Summary Judgment (Document # 20). Following Defendants' Motion for Summary Judgment, the undersigned issued an Order pursuant to Roseboro v. Garrison, 528 F.2d

309 (4ᵗʰ Cir. 1975), advising Plaintiff of the Motion for Summary Judgment and the possible consequences if he failed to respond adequately. Plaintiff filed a Response (Document # 22) on February 8, 2007, to which Defendants filed a Reply (Document # 24) on February 20, 2007. Plaintiff filed additional attachments to his Response on March 5, 2007. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. Because these are dispositive motions, this Report and Recommendation is entered for review by the district judge.

## II.    FACTUAL HISTORY

Plaintiff alleges in his Complaint that, on September 13, 2006, Defendants used an excessive amount of mace in a neighboring inmate's cell and that he suffered injuries as a result of the overspray of mace. Specifically, Plaintiff alleges that "his knoes felt like it was on fire. He threw up breakfast, he couldn't eat lunch and lost his appetite at dinner. He got light headed and threw up in the toilet, he could not stand up without getting dizzy. His room was foggy from the gas, he could bearly open his eyes, he was crying when he did opened them. The gas had his eyes burning severly." Complaint at ¶ 11. Although not completely clear from the Complaint, Plaintiff also appears to allege that he was denied medical attention.

Lt. Byrd avers that Plaintiff did not ask him to see medical personnel nor did he make any complaints to him that his eyes, nose, or skin was burning as a result of the mace used in the other inmate's cell. Byrd Aff. at ¶¶ 5-6. He further avers that the other inmate's cell was decontaminated using fans and the officers who decontaminated it did not wear gas masks. Id. at ¶¶ 7-8; see also Outlaw Aff. at ¶¶ 8-9. Lt. Byrd does not believe that the mace entered Plaintiff's cell as there are only approximately three centimeters between the door to his cell and the floor and fans were used

immediately after the extraction of the other inmate in order to clear the air.  Id.  at ¶ 9; see also Outlaw Aff. at ¶ 10.  Furthermore, he avers that it is standard SCDC policy to use Top Kop mace to obtain compliance from a dangerous, non-compliant inmate.  Id. at ¶ 11.  Officer Outlaw also avers that Plaintiff made no complaints to him that his eyes, nose or skin was burning as a result of the use of the mace nor did he ask to see medical personnel.  Outlaw Aff. at ¶¶ 6-7; see also Waters Aff. at ¶¶ 5-6; Neal Aff. at ¶ 4.  Furthermore, Nurse Neal averred that Plaintiff never requested medical assistance in the days following the incident.  Neal Aff. at ¶¶ 4-5.  In addition, Plaintiff's medical records reveal that he did not make any complaints regarding the use of the mace or any lasting effects of the mace during his medical visits in the days and weeks following September 13, 2006.  See Medical Records attached to Defendants' Motion.

In response to Defendants' Motion for Summary Judgment, Plaintiff submits his own affidavit and the affidavit of inmate Johnny Calloway.  Plaintiff states in his own affidavit that he was banging on his door for medical attention but that Defendants totally ignored his requests.  Plaintiff Affidavit.  He asserts that his eyes stay blurry, that he sees "floaters" and that he has "real bad sinus problems."  Id.  Inmate Calloway avers that he heard Plaintiff telling Defendants that he needed to see the nurse but none of Defendants acknowledged his pleas.  Calloway Affidavit.  He also avers that he knows the nurses heard Plaintiff asking for help because they were right outside his cell.  Id.

## III.     PLAINTIFF'S MOTION FOR PROTECTION, INJUNCTION AND/OR COUNSEL

On January 3, 2007, Plaintiff filed a motion requesting that the Court order the SCDC to update the law books in the law library and provide Plaintiff with the law books he requests within

one day of his request.  He further requests, that if such relief cannot be granted, that he be appointed counsel.

To the extent plaintiff is seeking temporary injunctive relief, it is recommended that the motion be denied. In determining whether to grant injunctive relief prior to trial, a court must consider four factors:  (a) The plaintiff's likelihood of success in the underlying dispute between the parties; (b) whether the plaintiff will suffer irreparable injury if the injunction is not issued; (c) the injury to the defendant if the injunction is issued; and (d) the public interest.  Scotts Co. v. United Indus. Corp., 315 F.3d 264, 271 (4th Cir.2002) (citing Blackwelder Furniture Co. v. Seilig Manufacturing Co., 550 F.2d 189, 193-95 (1977)). The court must first determine whether the plaintiff has made a strong showing of irreparable harm if the injunction were to be denied; if so, then the court must balance the likelihood of harm to the plaintiff against the likelihood of harm to the defendant if the injunction were issued. Id. ( citing Safety-Kleen, Inc. (Pinewood) v. Wyche, 274 F.3d 846, 859 (4th Cir.2001); Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 812 (4th Cir.1991)).  The Court in Bloodgood v. Garranghty, 783 F.2d 470 (4th Cir. 1986) held that:

> An injunction is a drastic remedy and will not issue unless there is an imminent threat of illegal action.  "Injunction issues to prevent existing or presently threatened injuries.  One will not be granted against something merely feared as liable to occur at some indefinite time in the future." Connecticut v. Massachusetts, 282 U.S. 660, 674, 51 S.Ct. 286, 291, 75 L.Ed. 602 (1931).  As one circuit court has noted recently, "bare allegations of what is likely to occur are of no value since the court must decide whether the harm will in fact occur.   The movant must provide proof that the harm has occurred in the past and is likely to occur again, or proof indicating that the harm is certain to occur in the near future." Wisconsin Gas Co. v. F.E.R.C., 758 F.2d 669, 674 (D.C.Cir.1985).

Bloodgood, 783 F.2d at 475.

Generally, states must affirmatively provide prisoners with either law libraries or persons trained in law to prosecute both post-conviction proceedings and civil rights actions. Bounds v. Smith, 430 U.S. 817 (1977); Carter v. Mandel, 573 F.2d 172 (4th Cir. 1978). However, meaningful access to the courts is the touchstone. Bounds, 430 U.S. at 823. Bounds did not create an abstract, free-standing right to a law library or legal assistance. To prevail, an inmate must demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim. The right to access underlying Bounds is narrow. It only extends to suits attacking sentences and challenging conditions of confinement and does not require that the state enable the prisoner to discover grievances or to litigate effectively in court. Lewis v. Casey, 518 U.S.343 (1996). Actual injury must be more than theoretical deficiencies, it is showing that the alleged deficiencies have hindered or are hindering a prisoner's efforts to pursue a legal claim. Id.

A review of the plaintiff's motion reveals that he has not been denied access to legal materials. The plaintiff simply complains about the procedure that allows him access to legal materials. He does not allege a complete denial of access to all legal materials. Furthermore, plaintiff has failed to allege or show proof of any actual injury by not having more access to the law library.

Additionally, section 1983 by its terms confers authority to grant equitable relief as well as damages, but it permits suit in equity only when that is proper proceeding for redress. Plaintiff must show real and immediate threat of injury. See Los Angeles v. Lyons, 461 U.S. 95 (1983). Moreover, principles of federalism limit the scope of federal court's power to intervene in internal operations of state and local agencies. Rizzo v. Goode, 423 U.S. 362, 378-80 (1976); Taylor v. Freeman, 34 F.3d 266, 269 (4th Cir. 1994). The courts are directed to leave prison administration to the discretion

of those best suited to running the prisons.  Granting plaintiff injunctive relief would have the effect of allowing a prisoner to "approve" actions taken by the prison administration that might have an impact on them, because any attempt to require his compliance might be construed (by any of the parties) as a violation of the order.  Importantly, the plaintiff has not shown that he is currently subject to a real and immediate threat of harm.  See Los Angeles v. Lyons, 461 U.S. 95 (1983).  Thus, the relief sought by Plaintiff is not proper.

Furthermore, there is no right to appointed counsel in Section 1983 cases.  Hardwick v. Ault, 517 F.2d 295 (5th Cir. 1975).  The court is granted the power to exercise its discretion to appoint counsel for an indigent in a civil action.  28 U.S.C. § 1915(d) and Smith v. Blackledge, 451 F.2d 1201 (4th Cir. 1971).  However, the appointment "should be allowed only in exceptional cases." Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975).

The court has reviewed the pleadings and has determined that there are no unusual circumstances which justify the appointment of counsel, nor will the plaintiff be denied due process if an attorney is not appointed.  Accordingly, Plaintiff's Motion for Protection, Injunction and/or Counsel (Document # 12) should be denied.

## IV.    PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT

On January 16, 2006, Plaintiff filed a Motion for Entry of Default.  Plaintiff asserts that he filed an amended complaint in the Richland County Court of Common Pleas on November 2, 2006, and that Defendants have failed to file a responsive pleading.  Plaintiff attaches to his Motion a "Notice of Motion and Motion for Leave of Court to Amend," "Amended Summons," and page 1 of an "Amended Complaint" filed in the Richland County Court of Common Pleas on November 1, 2006.

Defendants assert that the action filed in the Richland County Court of Common Pleas was removed to this Court on October 26, 2006, and that an answer to Plaintiff's original complaint was filed the same day.[1]  Furthermore, Defendants assert that Plaintiff has failed to submit proof that Defendants were actually served with the amended complaint or that the motion for leave to file the amended complaint was ever granted.

First, a plaintiff may amend its complaint only by leave of court once a defendant has filed a responsive pleading.  See Rule 15(a), Fed.R.Civ.P.  Therefore, because Defendant filed its answer before Plaintiff filed his motion for leave to amend his complaint, Defendant was not required to answer the amended complaint unless the motion was granted.  Second, because the motion was filed in state court after the action was removed to this court, it did not become a part of this court's record.  Finally, although Plaintiff filed another Motion for Leave to File Amended Complaint (Document # 5) after the action was removed to this court, that Motion has been denied by an Order filed contemporaneously herewith.

Because Defendants filed an answer to Plaintiff's original complaint, and Plaintiff's Motion to file an amended complaint has been denied, Defendants are not in default and Plaintiff's Motion for Entry of Default (Document # 18) should be denied.

---

[1]See Civil Action No. 4:06-cv-3047-TLW.  When the complaint was originally removed from the state court, this civil action number was assigned.  Thereafter, the undersigned granted Defendants' Motion to Sever the Complaint and on November 29, 2006, new civil action numbers were assigned to each individual Plaintiff.

## V.    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A.    Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972).  In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial.  See Fed. R. Civ. P. 56(c).  Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact."  In the Celotex case, the Court held that defendants were "entitled to judgment as a matter of

law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof.  Celotex, 477 U.S. at 322-323.

### B.     Discussion

#### 1.     Allegations/Arguments of Parties

Plaintiff alleges that he suffered cruel and unusual punishment and deliberate indifference to serious medical needs when the mace was sprayed into the cell of a neighboring inmate.  He further claims that he was denied access to SCDC's inmate grievance system because he attempted to file a grievance regarding the above events, but his grievance was thrown away.  He asserts a cause of action pursuant to 42 U.S.C. § 1983 as well as state causes of action for gross negligence, gross negligence in supervision and retention, due process, conspiracy, retaliation and assault and battery.

Defendants filed a motion for summary judgment arguing that the complaint should be dismissed for Plaintiff's failure to properly exhaust his administrative remedies, that qualified immunity applies as to Plaintiff's claims of cruel and unusual punishment, deliberate indifference, and denial of access to the grievance system, that Plaintiff cannot establish that Defendants violated his rights to be free from cruel and unusual punishment or deliberate indifference, that Plaintiff has no constitutional right of access to the grievance system, and that Plaintiff's state law claims fail as a matter of law.

#### 2.     Exhaustion of Administrative Remedies

Defendants assert Plaintiff's complaint should be dismissed for failure to exhaust his administrative remedies. Defendants assert that Plaintiff alleges in his complaint that the incident took place on September 13, 2006, and Plaintiff along with four other plaintiffs filed this action in

the Court of Common Pleas for Richland County on September 18, 2006. Thus, Plaintiff could not have exhausted his administrative remedies. Further, Defendants argue that even assuming Plaintiff did file a grievance as he asserted in his complaint, he could not have exhausted his remedies relating to the grievance, not to mention that there was no time for a response to the grievance before Plaintiff filed this action. Additionally, Defendants argue that Plaintiff has failed to allege he pursued any other administrative remedy beyond the mere filing of a Step 1 grievance within PCI and that this failure to take any additional administrative grievance steps means that Plaintiff failed to properly exhaust his administrative remedies. Defendants submitted the grievance record via the SCDC's grievance coordinator which reveals no grievance related to this incident is reflected in Plaintiff's file. Further, Defendants submitted the affidavits of Sergeant Williams, Lt. Byrd, Sergeant Waters, and Lt. Outlaw who state they have never thrown away or discarded an inmate's grievance and that they did not do so in this case as Plaintiff alleged.

In the recent United States Supreme Court case, Woodford v. NGO, 126 S.Ct. 2378 (2006), the Court held that the PLRA exhaustion requirement requires proper exhaustion. Within the decision, the Court stated that administrative law requires proper exhaustion of administrative remedies which "'means using all steps that the agency holds out, and doing so properly.'" Id. at 2385 (citing Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)).

Plaintiff claims that he filed a grievance, but that it was thrown away. Nevertheless, Plaintiff filed this action within a few days of the alleged incident which means there was no time for a response to a grievance had he filed one. Additionally, assuming arguendo Plaintiff completed step one of the administrative grievance process, it is undisputed that he failed to proceed to the necessary

-10-

additional steps to exhaust his administrative remedies.[2]   Accordingly, based on the evidence provided, Plaintiff has not exhausted all administrative remedies. Therefore, it is recommended that this action be dismissed for failure to exhaust administrative remedies.

Alternatively, the merits of Plaintiff's claims are discussed below.

### 3.     Cruel and Unusual Punishment

The Eighth Amendment protects inmates from inhumane treatment and inhumane conditions while in prison. A claim for cruel and unusual punishment requires the inmate to demonstrate that he has suffered serious or significant physical or mental injury as a result of the challenged condition. In addition, prison officials cannot be held liable under the Eighth Amendment unless they knew of and disregarded an excessive risk to inmate health or safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Further, the plaintiff must produce evidence of serious or significant physical or emotional injury resulting from challenged conditions to withstand summary judgment on prison conditions claim. Id. at 1380-1381. The undersigned concludes plaintiff has failed to produce any evidence of serious or significant physical or emotional injury resulting from his allegations.  At most, Plaintiff lost his appetite and threw up on the day the mace was used.  Even if Plaintiff was denied medical attention on the day of the incident, his medical records reveal that he did not mention any serious or significant injuries from the use of the mace in the days and weeks following September 13, 2006, whenever he did visit medical.  His medical records further reveal that Plaintiff believes his blurred vision is the result of a detached retina, not the use of mace.  Clearly, Plaintiff fails to present

---

[2]Even if Sergeant Williams did throw away the original grievance, Plaintiff made no effort to file the grievance with another officer or make any other attempts to comply with the administrative grievance procedure.  See Jones v. Smith, 266 F.3d 399, 400 (6th Cir. 2001)(exhaustion required even though plaintiff claimed futility).

competent medical evidence relating any eye or sinus problems to the incident of September 13, 2006.  Accordingly, Plaintiff's claim of cruel and unusual punishment should be dismissed.

### 4.        Deliberate Indifference to a Serious Medical Need

In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id. (quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976)).  The Court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . .  We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment.  This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Id. at 103-105 (internal citations and footnotes omitted).

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the Court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> . . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Id. at 107.

Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not

prevail. Id.; Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

In order to establish claim for deliberate indifference to a serious medical need under the Eighth Amendment, Plaintiff must show that, objectively assessed, he had a "sufficiently serious" medical need to require treatment.  Brice v. Virginia Beach Correctional Center, 58 F.3d 101, 104 (4th Cir. 1995) (citing cases).  "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.' " Coppage v. Mann, 906 F. Supp. 1025, 1037 (E.D. Va. 1995) (quoting Monmouth Co. Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 450 U.S. 1041 (1981)).

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990).  In that case, the Court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851 (internal citations omitted).

As stated above, Plaintiff has produced no evidence that he suffered any serious injuries or that his medical needs were serious or life threatening.  As such, his deliberate indifference claim should be dismissed as well.

### 5.    Denial of Access to the Grievance System

Plaintiff alleges that his grievances were not handled properly in that his grievance on this alleged incident was thrown away. Defendants submitted affidavits attesting that plaintiff never filed

a grievance relating to the September 13, 2006, use of force. Nevertheless, there is no constitutional right to participate in grievance proceedings. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). As such, summary judgment is proper as to this claim.

      6.    **State Law Claims**

If the district judge accepts this Report and Recommendation, then the original federal jurisdiction claims will be dismissed. Title 28 U.S.C. § 1367(c)(3) provides, in pertinent part, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." The Fourth Circuit has recognized that "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir.1995) (holding district court did not abuse its discretion in declining to retain jurisdiction over the state law claims). See also, e.g., United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726-27, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Revene v. Charles County Comm'rs, 882 F.2d 870, 875 (4th Cir.1989). Therefore, the undersigned recommends that the district judge decline to retain jurisdiction over Plaintiff's state law causes of action.

## V.    CONCLUSION

In light of the above analysis, it is recommended that Plaintiff's Motion for Protection, Injunction and/or Counsel (Document # 12) be denied, Plaintiff's Request for Entry of Default (Document # 18) be denied, Defendants' Motion for Summary Judgment (Document # 20) be granted as to Plaintiff's federal claims, and Plaintiff's state law claims be remanded to the Richland County Court of Common Pleas.

 s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

August 13, 2007
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**